**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF TWO UPS PARCELS ADDRESSED TO RICHARDSON REMEDIES IN CARIBOU, MAINE BEARING TRACKING NUMBERS 1Z 7R2 TG9 12 2596 0936 and 1Z 7R2 TG9 12 2894 0747 | No. 1:26-mj-00134-JCN |

**AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT**

I, Stephen Misek, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I am a Special Agent with the Drug Enforcement Administration, assigned to the Bangor Post of Duty, in the New England Field Division. I am a Special Agent with the DEA and have been since January 2021. I was previously stationed in the DEA Caribbean Division's Airport Investigations and Tactical Team ("AirTAT"), where I investigated Drug Trafficking Organizations ("DTOs") utilizing commercial airlines and mail courier services to transport large quantities of illicit substances across the continental United States. Prior to Joining the DEA, I was a police officer in the State of New Hampshire, beginning in 2008. Prior to becoming a law enforcement officer, I served four years as a Non-Commissioned Officer in the United States Army. As part my of duties as a DEA Special Agent, I investigate criminal violations pertaining to the illegal production, distribution, receipt and possession of controlled substances, in violation of various provisions of Title 21 of the United States Code.

2. I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(c). As a federal law enforcement officer, I am authorized to execute warrants issued under the authority of the United States.

3. The facts and information contained in this affidavit are based on my personal knowledge and observations, as well as that of other law enforcement officers involved in this and similar investigations, and information gained through my training and experience, all of which I believe to be reliable. Based on this training and experience and the facts set forth in this affidavit, I submit that there is probable cause to believe that the contraband and evidence of violations of Title 21 of the United States Code, including Sections 841(a)(1) and 843(b), identified in **Attachment B** are presently located within the United Parcel Service (UPS) 3 Day Select packages identified in **Attachment A**. This affidavit is intended to show that there is probable cause for the requested warrant.

## ITEMS TO BE SEARCHED

4. I seek a warrant to search the items described in **Attachment A**, specifically, two UPS 3 Day Select packages bearing printed labels, addressed to "Richardson Remedies 9 Bog Road Caribou, Me 04736 and bearing a return address of "Ash Vu (8007428577) 182 Business Center Dr Corona CA 92878." The first package, labeled 1 of 2, bears tracking number 1Z 7R2 TG9 12 2596 0936, hereinafter identified as "Parcel #1". The second package of equal description and labeled 2 of 2 bears tracking number 1Z 7R2 TG9 12 2894 0747 hereinafter identified as "Parcel #2". Parcels #1 and #2 are currently located at the Bangor Post of Duty

Secure Evidence Area in Hermon, Maine images of Parcel #1 are incorporated herein:






5. Parcel #2 bears tracking number 1Z 7R2 TG9 12 2894 0747, hereinafter identified as "Parcel #2". Parcel #2 is currently located in the Bangor Post of Duty Secure

Evidence Area in Hermon, Maine. Images of Parcel #2 are incorporated herein:






6. Parcels #1 and #2 measure approximately 24" x 16" x 16" and weigh approximately 22 pounds each. A review of UPS records shows the postage for Parcels #1 and #2 was prepaid, rather than being shipped from a business account, which can be more readily tracked.

## DESCRIPTION OF PROPERTY TO BE SEIZED

7. I have probable cause to believe that Parcels #1 and #2 may contain the following items of evidence, all of which are evidence of drug offenses set forth in Title 21, United States Code, Section 841, et seq., and/or contraband or other items illegally possessed, and which are seizable pursuant to Federal Rule of Criminal Procedure 41:

(a) Controlled substances, including scheduled drugs;

(b) United States Currency or other negotiable instruments;

(c) Packaging materials; and

(d) Documents, papers, records, correspondence or notes, or other effects, tending to show ownership or dominion and control over Parcel #1 and Parcel #2 and/or its contents, or tending to show the identity of the intended recipient(s) of Parcel #1 and Parcel #2 and/or its contents.

As listed in Attachment B.

## FACTS SUPPORTING PROBABLE CAUSE

8. On about Wednesday, April 8, 2026, DEA SA Nicholas Rich Received information from Naval Criminal Investigative Service (NCIS) Special Agent Scott Henderson in San Diego, California. ("SA Henderson"). SA Henderson provided SA Rich with the following information in substance and in part:

A. He was participating in an investigation involving the shipment of narcotics by UPS from California to destinations all over the country.

B. He had identified five UPS packages destined for Richardson Remedies, 9 Bog Road Caribou, Maine 04736 that may contain narcotics and be related to the investigation that he was working on. All five parcels had been shipped from the same individual and address in California.

C. During the course of his investigation, investigators had located and seized other UPS parcels shipped from the same California address that, when searched, proved to contain Marijuana and THC Wax.

9. I contacted UPS ON April 9, 2026, and learned the following:

A. All five packages had been shipped to 9 Bog Road Caribou, Maine, with the return address in Corona, California.

B. The five packages were shipped on April 8, 2026. Three of the parcels were sent via UPS Next Day Air, while the other two parcels were sent via UPS 3 Day Select.

C. The three parcels sent via UPS Next Day Air were transported in a different manner, due to the method of shipping selected and were seized by law enforcement in Kentucky.

D. The other two parcels would be flown to the UPS Distribution Facility, located at 1355 Airport Drive, Presque Isle, Maine and they would arrive on April 10, 2026.

E. The two parcels would be placed on a law enforcement hold until they could be retrieved. On April 13, 2026, I travelled to Presque Isle and retrieved the two packages and brought them to my office in Hermon, Maine, where they were secured.

10. On April 13, 2026, I spoke with Homeland Security Investigation Task Force

Officer Michael Nobles and learned the following in substance and in part:

A. On April 9, 2026, in Louisville, Kentucky, Task Force Officers, with Homeland Security Investigations (HSI), from the Airport and Parcel Interdiction Team Investigators applied for and received a search warrant from the Jefferson District Court, in the Commonwealth of Kentucky that authorized the search of the three parcels referenced above in paragraph 9(C).

B. Each of the parcels were packaged in brown cardboard boxes, with brown fiber type paper tape. Two were 24" x 16" x 16" and weighed approximately 22 lbs. The third package was of 15" x 11" x 7" and weighed approximately 12 lbs. (The weight and dimensions of the first two parcels is of note, as they matched the weight and dimensions of Parcel #1 and Parcel #2 currently held at my office.)

C. Upon execution of the search warrant, the agents in Kentucky discovered approximately10.67 kilograms of marijuana and 2 kilograms of THC wax.

The marijuana flower was vacuum-sealed in bags which were clear in the front with a black backing.

11. On April 15, 2026, I spoke to Investigator Matt Clark, with the State of Maine Office of Cannabis Policy (OCP), the consignee, Richardson Remedies, is a licensed medical marijuana caregiver. He confirmed that Richardson Remedies operates a shop at 9 Bog Road in Caribou. Investigator Clark confirmed that, although licensed caregiver, under the laws of the State of Maine and OCP regulations, a caregiver has no authority to receive and offer for sale marijuana obtained from out-of-state sources.

12. With respect to Parcels #1 and #2, I conducted research regarding the listed sender, return address, recipient, and delivery address using both open-source checks and a law enforcement database (CLEAR) that has proven reliable in previous investigations.

13. CLEAR database records confirmed that the delivery name and delivery address on Parcels #1 and #2, "Richardson Remedies 9 Bog Road Caribou, Maine 04736," is a valid business name and address. This is consistent with the information provided to me by OCP Investigator Clark.

14. CLEAR database records indicated that the listed return address on Parcels #1 and #2, "182 Business Center Drive (8007425877) Corona, California 92878" is a valid address. The search did not return results indicating that an individual with the listed sender name, Ash Vu, was associated with the listed return address.

15. Additionally, the phone number 8007425877, listed in the address, is a number which belongs to UPS Customer Service. I confirmed this by calling the number listed.

16. Based on my training and experience, I know that individuals who utilize the U.S. Postal Service and third-party mailing services, like UPS, to ship controlled substances can input

information for the sender and recipient. To attempt to avoid detection by law enforcement, these individuals sometimes use fictitious sender names. Also, these individuals may use fictious and/or incomplete return addresses that may not be associated with them in attempts to distance themselves from the contraband in case it is returned. Given that Ash Vu is not associated with the return address for Parcel #1 and #2 in CLEAR, and the phone number listed for Ash Vu is attributed to UPS Customer Service, these may be indicators that the sender may be attempting to distance him or herself from Parcels #1 and #2.

17. On April 14, 2026, Border Patrol Agent Jeremy Clark, and his narcotics-trained K9 "Dan," arrived at the Bangor Post of Duty to review Parcels #1 and #2 for the odor of controlled substances. Agent Clark advised me that he and K9 Dan have successfully completed US Border Patrol's Concealed Human/ Narcotic Detection Returning Handlers Course. Agent Clark and Dan are certified in the detection of concealed humans, and the odors of cocaine, methamphetamine, ecstasy and marijuana and their derivatives. Most recently certified June 5, 2025, Agent Clark and Dan are also certified in accordance with The North American Police Work Dog Association (NAPWA) in narcotic detection, most recently certified in September 2025. The following represents a summary of Agent Clark and K9 Dan's work that day:

A. I placed Parcel #1 and four additional packages in a row on the floor of my office, without Agent Clark knowing what package I believed to contain drugs. The area where the search was conducted is only accessible to law enforcement and maintenance employees and is not known to contain any narcotics. The additional packages of similar shape and size were placed in the searchable area that did not contain contraband.

B. K9 Dan and Agent Clark examined the line of parcels, and Agent Clark advised me that K9 Dan had positively alerted to the presence of the odor of narcotics with respect to a parcel I knew to be Parcel #1. Agent Clark explained that K9 Dan displayed changes of behavior when sniffing Parcel #1, including deep, rapid inhalation, and sitting at Parcel #1, indicating a positive response for the odor of narcotics with respect to Parcel #1.

C. Upon a positive alert for Parcel #1, Agent Clark moved away from the search area, and I removed Parcel #1 and placed Parcel #2 in a different location in the line of five packages.

D. K9 Dan and Agent Clark again examined the line of parcels. Agent Clark advised me that K9 Dan had positively alerted the presence of the odor of narcotics with respect to a parcel I knew to be Parcel #2. Agent Clark explained that K9 Dan displayed changes of behavior when sniffing Parcel #2, by "head snapping" and tracing odor along the floor at the parcel, then inhaling deeply, indicating a positive response for the odor of narcotics with respect to Parcel #2.

18. Based on my training and experience, I know that narcotics traffickers often send their illegal narcotics through the mail and other common carriers from source states, such as California, Arizona, Texas, Nevada, and the U.S. Territory of Puerto Rico.

19. Based on my training and experience, I know that distributors of controlled substances often send drugs by way of the U.S. Mail and other commercial third-party delivery services, such as UPS. I am also aware that the distribution of controlled substances generally involves the receipt and/or exchange of U.S. Currency or other negotiable instruments in exchange for those controlled substances. Those engaged in the distribution of such substances by way of commercial mailing services—either by shipping or receiving packages—may also send U.S. Currency or other negotiable instruments via the commercial delivery services to act as payment for controlled substances or for the distribution thereof, or to permit the further purchase of additional controlled substances.

20. Based on my training and experience, people involved in shipping narcotics sometimes seal and prepare parcels in a manner to make detection of illegal narcotics difficult by law enforcement and drug detecting canines. I am aware that controlled substances are typically packed in some form before being placed in a package to be mailed. The materials in which

controlled substances are packaged may be used, or intended, to disguise the scent of controlled substances or otherwise to obscure their contents. Such packaging materials may include Styrofoam packing peanuts, tape or other sealing materials, plastic wrap, bubble wrap, fabric softener sheets, fresh coffee grounds, and other materials intended to defeat detection by trained narcotics canines. Such materials may also contain additional evidence identifying the individual or individuals who owned or exercised dominion and control over the contents, such as fingerprints or genetic materials.

21. Based on my training and experience, I am aware that controlled substances sent by way of commercial delivery services and may sometimes be accompanied by documents, papers, records, correspondence, or notes, or other effects which tend to identify the individual or individuals who owned or exercised dominion or control over the package or its contents, or which tend to identify the intended recipient of the package or its contents.

22. Based on my training and experience, I know that in addition to narcotics, packages such as Parcels #1 and #2 often contain other indicia of narcotics trafficking such as bulk currency, money orders, records or "ledgers" relating to the controlled substances and/or records or other documents relating to the identity of the individual(s) who shipped the package(s) or the intended recipient(s) of such packages.

23. Based on my training and experience, I know that individuals shipping controlled substances via UPS primarily utilize UPS Next Day Air, 2nd Day air, and 3 Day select, because of the speed, reliability, and free package tracking service, as well as the perceived minimal chance of detection. Drug traffickers often use fictitious names and/or fictitious return addresses to prevent them from being identified and apprehended by law enforcement. Additionally, it is

not uncommon to use legitimate names and legitimate addresses that are not, at the time the package is shipped, associated with each other.

24. Based on the weight and dimensions of Parcels #1 and #2 and the foregoing information establishing that each contains controlled substances, each parcel may contain as much as 22 pounds of narcotics being shipped to a business that sells marijuana. Accordingly, I have probable cause to believe that the narcotics contained in the packages are intended for distribution, rather than mere use by the recipient.

25. Parcels #1 and #2 remain in the custody of the Drug Enforcement Administration, at the Bangor, Maine Post of Duty in Hermon, Maine.

**CONCLUSION**

26. Based upon the information set forth above, and in light of my training and experience, I have probable cause to believe that Parcels #1 and #2 as described in Attachment A contain the items described in Attachment B, which constitute evidence of violations of Title 21 of the United States Code, including Title 21, United States Code, Section 841(a)(1) (distribution of, or possession with intent to distribute, a controlled substance) and Title 21, United States Code, Section 843(b) (use of a communication facility in connection with the commission of a felony drug offense).

STEPHEN MISEK Digitally signed by STEPHEN MISEK Date: 2026.04.17 12:44:52 -04'00'

Stephen Misek
Special Agent

Sworn to telephonically and signed electronically in accordance with the requirements of Rule 4.1 of the Federal Rules of Criminal Procedure

Date: Apr 20 2026

City and state: Bangor, ME

Judge's signature

John C Nivison U.S. Magistrate Judge
Printed name and title